UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JOHN M. FALBO,

        Plaintiff,

v.                        Civil Action No. 2:17-cv-04046

ALBERT THOMAS FALBO; MARY
GUIFFRI; UNITED STATES OF
AMERICA; and DALE W. STEAGER,
Commissioner of the West
Virginia Tax Division of the
Department of Revenue,

        Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

        Pending are two motions for summary judgment and one motion for partial summary judgment. Plaintiff John M. Falbo and defendant Dale W. Steager, Commissioner, acting on behalf of the State of West Virginia, each filed a motion for summary judgment on January 10, 2018. Defendant United States of America filed a motion for partial summary judgment on January 17, 2018.

        John Falbo's complaint seeks partition by sale of a number of real properties jointly owned by himself, defendant Mary Guiffri, and defendant Albert Thomas Falbo. He also seeks to have Albert Falbo's share of the proceeds applied to the discharge of tax liens held by the United States and Steager.

Also pending is John Falbo's motion to dismiss Albert Falbo's counterclaim and to strike matter from Albert Falbo's answer, filed September 27, 2017. The counterclaim and answer are contained within the same document, and they more closely resemble a request for information than a typical counterclaim and answer. (See ECF #2.) At a scheduling conference held December 1, 2017, Albert Falbo advised the court that he had since spoken to counsel for John Falbo, that his issues had been resolved, and that he wanted to sell the real properties. Thus, John Falbo's motion to dismiss the counterclaim and to strike matter from the answer is granted.

In addition, pending is the United States' motion for a more definite statement, filed October 30, 2017. The United States asserted that the complaint failed to include three items required by 28 U.S.C. § 2410(b): "1. The address of the taxpayer whose liability created the lien; 2. [t]he identity of the internal revenue office which filed the notice; and 3. [t]he date and place such notice of lien was filed." (U.S. Mot. for More Definite Statement 1.) On November 7, 2017, John Falbo filed a response to the United States' motion, to which he attached documents containing the requested information. The United States did not reply. Accordingly, the United States' motion is denied as moot.

# I. Background

The facts underlying this matter are not in dispute. John Falbo and Albert Falbo each own a one-half undivided fee interest in the following real properties, all located in Fayette County, West Virginia, except that the property in paragraph D below is held by them as joint tenants with right of survivorship and except further that the property in paragraph B below is owned by them along with defendant Mary Giuffri in equal one-third undivided fee interests:

A.  Address: 120 4th Avenue, Montgomery, WV
    Account No. 06336841
    Map and Parcel: 07-2C-0057
    2017 Taxes: $719.37/half
    Deed Book 431, at Page 427
    Ownership: John M. Falbo and Albert T. Falbo

B.  Address: 325 4th Avenue, Montgomery, WV
    Account No. 06336315
    Map and Parcel: 07-1D-0247
    Pt. Lot Hotel Blk 35
    2017 Taxes: $1,161.62/half
    Deed Book 352, at Page 641
    Ownership: John M. Falbo, Albert Falbo and Mary
    Guiffri

C.  Address: 106 Lee Street, Montgomery, WV
    Account No. 06338643
    Map and Parcel: 07-3B-0022
    Lots Pt. 11-12-13 Coal Valley Inc.
    2017 Taxes: $742.22/half
    Deed Book 388, at Page 0115
    Ownership: John Falbo and Albert Thomas Falbo

D.  Address: 202 Third Avenue, Montgomery, WV

    a.  Account No. 6338661
        Map and Parcel: 07-1D-0228

Lot R R Ave
2017 Taxes: $1,463.58/half

    b.  Account No. 6337403
Map and Parcel: 07-1D-0270
Lot 15 Blk 11 3rd Ave Burger Chef
2017 Taxes: $55.64/half

    c.  Account No. 6338670
Map and Parcel: 07-1D-0231
Pt. Lot 1, Blk 36 Montg 30 ft 3rd Ave.
Deed Book 331, at Page 291
Ownership: John Falbo and Albert Thomas Falbo

E.  Address: Lee Street and Fourth Avenue, Montgomery, WV
Account No. 06336173
Map and Parcel: 07-1D-0225
Pt. Lot 36
2017 Taxes: $25.84/half
Deed Book 490, at Page 651
Ownership: John M. Falbo and Albert Thomas Falbo

F.  Address: 4th Avenue, Montgomery, WV
Account No. 6338411
Map and Parcel: 07-1D-0227
Lot 22 x 64 Blk 36 4th Avenue
2017 Taxes: $20.87/half
Deed Book 490, at Page 0649
Ownership: John M. Falbo and Albert Thomas Falbo

G.  Address: Third Avenue, Montgomery, WV
Account No. 6336208
Map and Parcel: 07-1D-0226
Pt. Lot 2 Blk 36
2017 Taxes: $635.91/half
Deed Book 369, at Page 0287
Ownership: John M. Falbo and Albert Thomas Falbo

H.  Ferry Street and Fourth Avenue, Montgomery, WV
Account No. 06337742
Map and Parcel: 07-1D-0236
Pt. Blk 36
2016 Taxes: $26.83/half
[Deed Book 488, at Page 0179]
Ownership: John M. Falbo and Albert Thomas Falbo

(Aff. of John Falbo ¶ 4; see also ECF #22 Attach. 1, Title Report ("Title Report") at 1-3.)

John Falbo commenced this action on August 30, 2017, in the Circuit Court of Fayette County. He seeks partition by sale of the real properties listed above pursuant to West Virginia Code §§ 37-4-1 et seq. (See Compl. ¶¶ 8, WHEREFORE Clause.) The United States and Steager are joined in this matter inasmuch as they claim liens on the real properties owned by Albert Falbo in Fayette County.[1] See Farmers & Merchants Nat'l Bank & Trust Co. v. Janney, 117 W. Va. 28, 30 (1936) (stating that creditors have the right to share in the proceeds of the sale of property in which they have an interest). The state court docket shows that Giuffri received service of process on September 6, 2017, (See ECF #1 Attach. 5), but she did not file an answer nor has she otherwise appeared.

---

[1] The Title Report showed an abstract of judgment filed in Fayette County in favor of State Electric Supply Co. ("Electric Supply") and against Albert Falbo. See Title Report at 62. On June 25, 2018, the court directed the parties to join Electric Supply in this matter. On July 5, 2018, John Falbo notified the court that counsel for Electric Supply states that the judgment has been paid, but that a release has not been recorded. (See ECF #35 at 1-2.) Counsel for Electric Supply also informed counsel for John Falbo that a release will be filed with the Clerk of the County Commission in Fayette County. (Id.; see id. Ex. B (copy of signed and notarized release to be filed).) In view of this information, the court concludes that Electric Supply need not be joined in this matter.

On September 27, 2017, the United States removed to
this court, invoking the court's jurisdiction under 28 U.S.C. §§
1441(a), 1442(a), 1444, and 1446(b)(3) (2016).  (Not. Removal ¶
3.)  According to 28 U.S.C. § 2410, the United States waives its
sovereign immunity for the limited purpose to be named in, inter
alia, a civil action "to partition . . . real . . . property on
which the United States has or claims a . . . lien."  See Hudson
Cty. Bd. of Chosen Freeholders v. Morales, 581 F.2d 379, 382-83
(3d Cir. 1978) ("[Section] 2410, while it does not of itself
confer jurisdiction on district courts, is the basis for finding
a waiver of sovereign immunity . . . .").

At the December 1, 2017, scheduling conference, John
Falbo, Albert Falbo, the United States, and Steager informed the
court that they agreed to the facts of the case and desired a
private sale of the properties.  Thus, the court, by order
entered December 6, 2017, directed John Falbo (alongside
Guiffri, if possible); the United States; and Steager to file a
title report for the real properties; a plan of sale; and
motions for summary judgment setting forth the dollar amount of
liens, the rates of interest accruing thereon, and an agreed
lien priority.  (See ECF #17.)

The United States assessed income taxes against Albert
Falbo on three occasions: November 19, 2012, for the tax period

ending December 31, 2011; November 18, 2013, for the tax period

ending December 31, 2012; and January 11, 2016, for the tax

period ending December 31, 2013.  (Decl. of David W. Ross ¶ 3.)

For each assessment, the United States demanded payment from

Albert Falbo and filed with the Clerk of the County Commission

in Fayette County a notice of tax lien.  (Id. ¶¶ 3-4, 9.)  The

corresponding notices of tax lien were recorded in Fayette

County on November 12, 2013, in Federal Tax Lien Book 9, at page

453; January 24, 2014, in Federal Tax Lien Book 9, at page 463;

and May 31, 2016, in Federal Tax Lien Book 9, at page 598,

respectively.  (Id. ¶¶ 3, 9; Title Report at 4; ECF #22 Attach.

2, Federal Tax Lien Documents.)[2]  Albert Falbo has not paid those

taxes.  (Decl. of David W. Ross ¶ 5.)  As of December 31, 2017,

the respective amount owed under each assessment was

$1,158,013.03; $289,230.22; and $356,985.77, totaling

$1,804,229.07.  (Id. ¶¶ 3, 6.)  Interest on that amount is

currently compounding daily at a rate of four percent per annum.

---

[2] The Title Report and the notices of tax lien show an additional
federal tax assessment.  The assessment was in the amount of
$294,585.38 for the tax period ending December 31, 2009.  (Title
Report at 4; ECF #22 Attach. 2, Federal Tax Lien Documents.)
The corresponding notice of tax lien was recorded in Fayette
County on October 30, 2011, in Federal Tax Lien Book 9, at page
284.  (Title Report at 4; ECF #22 Attach. 2, Federal Tax Lien
Documents.)  The United States has not sought summary judgment
on this assessment.

(Id. ¶ 7 (citing Rev. Rul. 2017-25, 2017-52 I.R.B. 586 (Dec. 26, 2017)).)

The West Virginia State Tax Department filed with the Clerk of the County Commission in Fayette County three notices of tax lien against Albert Falbo for the tax periods ending December 31 of 2011, 2012, and 2013. (See Steager Mot. Summ. J. Attach. 1.) The notices were recorded on May 23, 2013, in State Tax Lien Book 34, at page 363; April 24, 2014, in State Tax Lien Book 35, at page 439; and May 31, 2016, in State Tax Lien Book 37, at page 568. (Id.; see also Title Report at 4.) The original balances due were $170,812.01; $78,797.71; and $65,699.40, respectively. (Steager Mot. Summ. J. Attach. 1.) However, Steager states that as of December 31, 2017, the outstanding balances were $128,193.82; $64,769.00; and $40,202.00, respectively, totaling $233,164.82. (Steager Mot. Summ. J. 2.) Beginning January 1, 2018, and ending December 31, 2018, interest on that amount compounds daily at a rate of 8.75 percent per annum. See State Tax Commissioner, Administrative Notice 2017-26, Notice of Adjusted Interest Rates on Tax Underpayments (Dec. 8, 2017), https://tax.wv.gov/Tax Professionals/AdministrativeNotices/Pages/AdministrativeNotices2 017.aspx; W. Va. Code § 11-10-17a(e)(1) (stating that interest

on deficiencies is calculated "using the interest rate in effect for each respective year").

On January 10, 2018, John Falbo and Steager filed separate motions for summary judgment. John Falbo seeks partition by sale of the jointly-owned real properties according to his proposed plan, which contemplates a private sale, (see John Falbo Mot. Summ. J. ¶ 2), and Steager seeks summary judgment directing Albert Falbo's share of the sale proceeds to "be paid to West Virginia State Tax Department in accordance with the lien priority." (Steager Mot. Summ. J. 5.) Necessarily, Steager's desired judgment would require the court also to decide the existence and amount of the State of West Virginia's liens. The United States moved for summary judgment on January 17, 2018, requesting judgment of the existence and amount of its liens against Albert Falbo. (U.S. Mot. Partial Summ. J. 4-5.) The United States also joins in Steager's request for Albert Falbo's share of the proceeds to be applied to the tax liens. (U.S. Resp. to Mots. Summ. J. 1.)

As earlier noted, the parties, excluding Guiffri who has not appeared, agree to the sale of the real properties. The issues in dispute involve alleged contribution claims of John Falbo, and possibly Guiffri, against Albert Falbo; the priority,

if any, of John Falbo's attorneys' fees; and the method and plan of sale.

## II. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the court is guided by the principle that it must "construe the evidence, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the nonmoving party." Dash v. Mayweather, 731 F.3d 303, 310 (4th Cir. 2013) (citing PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 119 (4th Cir. 2011)).

"As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2725 (2nd ed. 1983)).

Regarding genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also S.B. v. Bd. of Educ., 819 F.3d 69, 74 (4th Cir. 2016) (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). The moving party must first "'show[]' - that is, point[] out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the movant carries its burden, the non-movant must demonstrate that "there is sufficient evidence favoring [it] for a jury to return a verdict" in its favor. Anderson, 477 U.S. at 249 (citation omitted); see also Dash, 731 F.3d at 311. As explained by our circuit court of appeals,

> [a]lthough the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997). Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)).

Dash, 731 F.3d at 311 (alteration in original).

### III. Discussion

#### A. Liens

The United States has established a prima facie case
of Albert Falbo's federal tax liability.  A federal tax lien
against a person arises after an assessment and a demand for
payment have been made to the person and the person does not
pay.  See 26 U.S.C. §§ 6321, 6322; see also United States v.
Hopkins, 859 F. Supp. 208, 211 (S.D. W. Va. 1994) (Copenhaver,
Jr., J.) (quoting United States v. Nat'l Bank of Commerce, 472
U.S. 713, 719 (1985)).  As the Supreme Court of the United
States has explained, "[a]n 'assessment' amounts to an [Internal
Revenue Service] determination that a taxpayer owes the Federal
Government a certain amount of unpaid taxes.  It is well
established in the tax law that an assessment is entitled to a
legal presumption of correctness."  United States v. Fior
D'Italia, 536 U.S. 238, 242 (2002).

David W. Ross, the Revenue Officer of the Internal
Revenue Office tasked with collecting Albert Falbo's federal tax
liabilities, declares that federal income tax assessments were
made against Albert Falbo for the tax periods ending December 31
of 2011, 2012, and 2013.  (Decl. of David W. Ross ¶¶ 1-4.)
Those assessments are evidenced by the notices of tax lien filed

in Fayette County. (E.g., ECF #22 Attach. 2, Federal Tax Lien Documents.) Ross further declares that those assessments remain unpaid. (Decl. of David W. Ross ¶ 5.) Ross states that as of December 31, 2017, Albert Falbo's outstanding federal income tax liabilities totaled $1,804,229.07, plus daily interest from that date at a rate of four percent per annum. (Id. ¶¶ 6-7 (citing Rev. Rul. 2017-25, 2017-52 I.R.B. 586 (Dec. 6, 2017)).) There is no dispute regarding the existence nor amount of the federal income tax liabilities. Accordingly, the court finds that the United States holds valid liens against Albert Falbo's interest in the above listed properties, aggregating $1,804,229.07 plus interest at the rate of four percent per year, compounded annually, and accruing from December 31, 2017.

Steager has also established a prima facie case of Albert Falbo's state tax liability. Under W. Va. Code Ann. § 11-10-12(a) (LexisNexis 2018), the State of West Virginia possesses "a lien upon the real and personal property of [a] taxpayer" who owes "[a]ny tax, additions to tax, penalties or interest due and payable." The State may issue assessments for unpaid taxes. Id. § 11-10-7. A State tax assessment is regarded as presumptively correct. See Pa. & W. Va. Supply Corp. v. Rose, 179 W. Va. 317, 322 (1988) ("When a petition for reassessment is filed, the burden of proof is upon the taxpayer

to prove that the assessment is incorrect and contrary to law. W. Va. Code § 11-10-9 (1987 Replacement Vol.).”); Taylor v. Steager, 2018 W. Va. LEXIS 236, at *19 (2018) (memorandum decision) (“West Virginia Code § 11-10A-10(e) provides that the taxpayer generally has the burden of proof before the [Office of Tax Appeals].”).

The West Virginia State Tax Department filed in Fayette County three notices of tax lien for the tax periods ending December 31 of 2011, 2012, and 2013. (See Steager Mot. Summ. J. Attach. 1.) Steager contends that those tax liabilities totaled $233,164.82 as of December 31, 2017. (Steager Mot. Summ. J. 2.) Interest on that amount accrues at a rate of 8.75 percent per annum. State Tax Commissioner, Administrative Notice 2017-26, Notice of Adjusted Interest Rates on Tax Underpayments (Dec. 8, 2017), https://tax.wv.gov/Tax Professionals/AdministrativeNotices/Pages/AdministrativeNotices2 017.aspx; W. Va. Code § 11-10-17a(e)(1). There is no dispute regarding the existence nor amount of the state income tax liabilities. Accordingly, the court finds that Steager holds valid liens against Albert Falbo’s interest in the above listed properties, aggregating $233,164.82 plus interest at the rate of 8.75 percent per year and accruing from December 31, 2017.

John Falbo states that he and Guiffri "appear to have a contribution claim . . . for amounts taken from the real estate accounts approximating $67,135.00, but these claims were not asserted in the Complaint." (John Falbo Mot. Summ. J. ¶ 4.) Inasmuch as that statement is offered without either pleading a cause of action for that relief or furnishing any supporting evidence, summary judgment on that contribution claim is denied.

The United States and Steager have agreed to prioritize their liens according to the principle "first in time, first in right" based on the dates of tax assessment by the United States and of the recording of notice of tax lien by Steager. (See ECF #19 at 1-2.) The court sees no reason to disturb that agreement, and the tax liens against Albert Falbo's interest in the above listed properties are hereby ORDERED to take priority in the following order and amount:

1. In favor of the United States in the amount $1,158,013.03 as of December 31, 2017, plus interest accrued from that date;

2. In favor of the State of West Virginia in the amount of $128,193.82 as of December 31, 2017, plus interest accrued from that date;

3. In favor of the United States in the amount of $289,230.22
   as of December 31, 2017, plus interest accrued from that
   date;

4. In favor of the State of West Virginia in the amount of
   $64,769.00 as of December 31, 2017, plus interest accrued
   from that date;

5. In favor of the United States in the amount of $356,985.77
   as of December 31, 2017, plus interest accrued from that
   date; and

6. In favor of the State of West Virginia in the amount of
   $40,202.00 as of December 31, 2017, plus interest accrued
   from that date.

B. Partition by Sale

John Falbo seeks the partition by sale of the jointly-
owned real properties described above. In West Virginia, "[t]he
common law right to compel partition has been expanded by
[article 4, chapter 37 of the West Virginia Code] to include
partition by sale." Syl. Pt. 2, Consol. Gas Supply Corp. v.
Riley, 161 W. Va. 782 (1978). To compel a partition by sale,
the Supreme Court of Appeals of West Virginia requires the
following:

> "By virtue of W. Va. Code § 37-4-3, a party desiring
> to compel partition through sale is required to
> demonstrate [(1)] that the property cannot be
> conveniently partitioned in kind, [(2)] that the
> interests of one or more of the parties will be
> promoted by the sale, and [(3)] that the interests of
> the other parties will not be prejudiced by the sale."
> Syl. Pt. 3, id.

Syl. Pt. 1, Ark Land Co. v. Harper, 215 W. Va. 331 (2004)

(alterations in original).  No one disputes John Falbo's

attestation that those requirements have been met.  (Aff. of

John Falbo ¶¶ 6-7.)  Accordingly, John Falbo's motion for

summary judgment is granted insofar as it seeks partition by

sale of the jointly-owned real properties.

The United States and Steager seek to have Albert

Falbo's share of the proceeds from the partition sale applied to

the discharge of their liens according to the agreed order of

priority.  (See U.S. Resp. to Mots. Summ. J. 1; Steager Mot.

Summ J. 5.)  The court notes that there may be a tension between

that request and West Virginia Code § 37-4-4, which states that

"[w]hen there are liens . . . on the interest of any party to a

partition suit, the court may, on the petition of any person

holding a lien, ascertain the liens and apply the dividend of

such party in the proceeds of sale to the discharge of such

liens so far as may be necessary for that purpose."  In Morrison

v. Holcomb, the Supreme Court of Appeals decided "that there

must be a lienor and a petition" before a court may ascertain

the liens on a party's interest.  123 W. Va. 153, 160 (1941).
The high court continued: "The proceeding for the ascertainment
and enforcement of liens against a co-tenant's share of the
proceeds being purely statutory, such requirements as the
statute sets up must be strictly followed."  Id.

     To the extent that the requirements of Section 37-4-4
are unmet here, a partition suit is nonetheless "equitable in
nature," Murredu v. Murredu, 160 W. Va. 610, 616 (1977) (citing
Stalnaker v. Stalnaker, 139 W. Va. 658 (1954)), and West
Virginia Code § 37-4-1 allows a presiding court to "take
cognizance of all questions of law affecting the legal title[]
that may arise in any proceedings."  Since the lienors are
present here and have a right to Albert Falbo's share of the
proceeds, Farmers & Merchants, 117 W. Va. at 30, there is no
issue in applying those proceeds to the discharge of the United
States' and the State of West Virginia's liens.  Accordingly,
the United States' and Steager's motions for summary judgment
are granted insofar as they seek payment from Alber Falbo's
share of the proceeds from the partition sale as set forth
above.

     John Falbo requests that the court approve a private
sale of the jointly-owned real properties.  Until the motions
for summary judgment, John Falbo, Albert Falbo, the United

States, and Steager had agreed to such a sale. Now, Albert Falbo has about-faced from that position and instead prefers that "all properties to be sold on the Court House steps." (Albert Falbo Summ. J. Resp.; see also Albert Falbo Rebuttal.)

In West Virginia, courts have broad discretion in directing the manner of a judicial sale, guided by the principle that they "must strive to obtain the best price possible for the property sold." See Smith v. Rusmisell, 205 W. Va. 261, 266 (1999); see also Smith v. Smith, 180 W. Va. 203, 209 (1988) ("Our cases do agree that a court does have rather broad discretion in deciding whether to accept a bid to ensure that a judicial sale is fairly conducted to bring the best possible price."); McNabb v. Love, 110 W. Va. 300, 302 (1931) ("The court has control of its sales, and will not confirm unless the price offered is fair and adequate."); Knapneck & White v. Keltz, 50 W. Va. 331, 334 (1901) ("[A] court could sell publicly or privately as the interests of the parties might require."). The court finds that a private sale has a much greater likelihood of yielding a higher price than a public sale. Accordingly, notwithstanding Albert Falbo's objection, John Falbo's motion for summary judgment is granted insofar as he seeks a private sale of the jointly-owned real properties.

John Falbo proposes the following plan of sale for the properties:

1.  That with the possible exception of a property subject to a purchase offer by the current tenant, the properties be listed for sale with a licensed and reputable real estate agent of the parties' selection, and if they cannot agree, the Court, or a Commissioner selected by the Court, shall select an agent from a list of two proposed candidates supplied by each party.

2.  That the price at which the properties shall be sold shall be by agreement of the parties after determining offers recommended by the agent, and if the parties do not agree on the amount for which a property will be sold, a party may request that the Court, or an appointed Commissioner or Appraisers, determine the value of the property.

3.  That all costs of sale, including, but not limited to, deed preparation fees, payment of prorated real estate taxes, the costs of this partition suit, including the Plaintiff's reasonable attorney fees, be paid from the gross proceeds of sale, and that the tax liens of the United States and the State of West Virginia be paid in their order of priority from the net sale proceeds derived from the interests of Albert Thomas Falbo in the properties sold, with the remaining proceeds to be paid to John M. Falbo and Mary Guiffri as their interests may appear, and that the tax liens be released as to the properties sold, and if there is a dispute arising therefrom, that it be brought to the Court or an appointed Commissioner for resolution.

4.  That any questions, issues or disputes relating to the foregoing shall be decided by the Court, without a jury, and the parties waive any right to a jury trial in this Civil Action.

(John Falbo Brief Supp. Summ. J. 6.)

The United States lodged the only objection to the plan of sale, taking issue with the plan's payment of John Falbo's attorneys' fees before the discharge of its liens. (See U.S. Resp. to Mots. for Summ. J. 2.) The United States references two cases stating the limited holding that an interpleading plaintiff is generally not entitled to recover its attorneys' fees before the discharge of a prior federal tax lien. See Jonathan Melnick Auctioneers, Inc. Sauder Woodworks, Inc., 818 F.2d 861, 1987 WL 36036, at *1 (4th Cir. 1987) (unpublished decision) (citing cases) ("[C]ourts of appeal have consistently rejected attempts by interpleading plaintiffs to recover attorney's fees under . . . fee-shifting statutes . . . ."); Cavalier Serv. Corp. v. Wise, 645 F. Supp. 31, 37 (E.D. Va. 1986) (citing cases) ("An allowance for costs or attorney's fees may not be allowed a stakeholder of an interpleader fund to the extent that they are payable out of a part of the fund impressed with a federal tax lien."). John Falbo did not reply.

West Virginia Code § 37-4-1 provides in part that "[i]n all cases resulting in partition or sale the costs of suit shall come from the proceeds of sale." It is not entirely clear whether "costs of suit" include the attorneys' fees of a plaintiff prosecuting a partition action, and the Supreme Court of Appeals has not had occasion to address the issue.

Typically, attorneys' fees are apportioned according to the American rule, under which "litigants pay their own attorneys' fees" "absent statute or enforceable contract." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975), superseded on other grounds by statute, The Civil Rights Attorney's Fees Awards Act of 1976, Pub. L. No. 94-559, 90 Stat. 2641 (codified as amended at 42 U.S.C. § 1988), as recognized in Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 493 F.3d 110, 114 (2d Cir. 2007); accord Daily Gazette Co. v. Canady, 175 W. Va. 249, 250 (1985) (citing Nelson v. W. Va. Pub. Emps. Ins. Bd., 171 W. Va. 445, 450 (1982)).[3]

This is not an interpleader action under Federal Rule of Civil Procedure 22, so the United States' position is inapposite. Nevertheless, the court finds that "costs of suit" under West Virginia Code § 37-4-1 do not include attorneys' fees. The term "costs" has a particularized connotation that is widely considered not to include attorneys' fees. See generally 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and

_____

[3] Judicially-crafted exceptions to the American rule also allow a judge to shift payment of attorneys' fees to an opposing party or counsel when, for example, "the losing party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Alyeska Pipeline 421 U.S. at 258-59 (quoting F. D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129 (1967)); accord Daily Gazette, 171 W. Va. at 450 (quoting Nelson, 171 W. Va. at 451). Such conditions are not present here.

Procedure § 2666 (3d ed. 2018) (distinguishing costs, fees, and expenses).  Moreover, the West Virginia Legislature has explicitly provided for the shifting of attorneys' fees in other areas of the West Virginia Code when it saw fit to do so.  <u>See</u>, <u>e.g.</u>, W. Va. Code §§ 25-1A-8 (prisoner litigation), 29B-1-7 (freedom of information), 30-3C-4 (health care peer review), 46A-5-104 (consumer credit and protection), 48-5-504 (divorce).  Accordingly, John Falbo's motion for summary judgment on the proposed plan of sale is granted in part and denied in part.  The court approves the plan generally, as will more particularly be set forth following a court conference with counsel and unrepresented parties, except for the provision requiring payment of John Falbo's attorneys' fees out of the gross proceeds of sale before the discharge of the United States' and the State of West Virginia's liens, which request for attorney fees is denied.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that:

1. John Falbo's motion to dismiss defendant Albert Falbo's counterclaim and to strike matter from Albert Falbo's answer be, and hereby is, granted;

2. The United States' motion for a more definite statement be, and hereby is, denied as moot;

3. The tax liens held by the United States and the State of West Virginia are prioritized according to their agreed order of priority, as follows;

   a. In favor of the United States in the amount $1,158,013.03 as of December 31, 2017, plus interest accrued from that date;

   b. In favor of the State of West Virginia in the amount of $128,193.82 as of December 31, 2017, plus interest accrued from that date;

   c. In favor of the United States in the amount of $289,230.22 as of December 31, 2017, plus interest accrued from that date;

   d. In favor of the State of West Virginia in the amount of $64,769.00 as of December 31, 2017, plus interest accrued from that date;

   e. In favor of the United States in the amount of $356,985.77 as of December 31, 2017, plus interest accrued from that date; and

       f. In favor of the State of West Virginia in the amount of $40,202.00 as of December 31, 2017, plus interest accrued from that date;

4. John Falbo's motion for summary judgment be, and hereby is, granted in part and denied in part as set forth herein;

5. The United States' motion for partial summary judgment be, and hereby is, granted; and

6. Steager's motion for summary judgment be, and hereby is, granted.

It is further ORDERED that counsel and unrepresented parties appear before the court for a status conference at 2:30 P.M on August 6, 2018. At that time, the court will confer with counsel and unrepresented parties regarding a plan of sale, including such areas as appraisals; selection of real estate brokers; appointment of a special commissioner to manage and coordinate sale efforts, seek court approval of sales and costs incurred, and prepare and execute deeds to purchasers; and informing the court of the existence and status of any current tenants of the properties, including those tenants' right of first refusal, if any.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and to any unrepresented parties.

ENTER: July 17, 2018

John T. Copenhaver, Jr.
United States District Judge